IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

IVAN D. FOSTER,

  Plaintiff,

v.

DR. STEPHEN KLASKO, *et al.*,

  Defendants.

Civil No. 20-1905 (RBK/JS)

**OPINION**

**BUMB**, United States District Judge:

  This matter comes before the Court on *pro se* Plaintiff Ivan D. Foster's Motion for an *ex parte* Temporary Restraining Order ("TRO") (Doc. No. 2) and application to proceed *in forma pauperis* ("IFP") (Doc. No. 1-1). Specifically, Plaintiff seeks an order compelling Defendant Thomas Jefferson University Hospital Inc. ("Jefferson") to provide him with a doppler ultrasound of his kidneys to determine their blood flow and to determine if he has any cysts inside of his kidneys. (*Id.* at 2; Doc. No. 1-2 at 18). Plaintiff claims that Jefferson's failure to provide him with a doppler ultrasound scan on his previous visits to Jefferson hospitals was in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

  In order to obtain the extraordinary remedy of a TRO, a plaintiff must demonstrate that: (1) "it is likely to succeed on the merits"; (2) "it is likely to suffer irreparable harm absent issuance of the injunction; (3) the balance of equities does not disfavor granting an injunction; and (4) public interest concerns do not outweigh the interests advanced by issuance of the

injunction." *Fres-co Systems USA, Inc. v. Hawkins*, 690 F. App'x 72, 75 (3d Cir. 2017); *see also NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (explaining that plaintiff must show each element or injunctive relief will be denied).

Plaintiff's memorandum in support of his motion is vague and fails to present a coherent summary of the facts or of Plaintiff's legal arguments. While EMTALA does require hospitals to provide an "appropriate medical screening examination" to emergency room patients, 42 U.S.C. § 1395dd, Third Circuit precedent indicates that to satisfy this requirement, hospitals generally need to do no more than apply the same screening procedures to all similarly situated patients. *See Byrne v. Cleveland Clinic*, 519 F. App'x 739, 742 (3d Cir. 2013) (explaining that "[i]t is up to the hospital itself to determine what its screening procedures will be. Having done so, it must apply them alike to all patients" (internal quotation marks omitted) (quoting *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1138 (8th Cir. 1996)); *see also McClure v. Parvis*, 294 F. Supp. 3d 318, 324 (E.D. Pa. 2018) (explaining that "to state an EMTALA failure-to-screen claim, the plaintiff must allege that: (1) the patient had an emergency medical condition; and (2) the hospital did not screen the patient in the same way it screens other patients presenting with similar symptoms"). Plaintiff nowhere concretely alleges that he has been treated differently than other patients presenting his symptoms, other than an entirely conclusory allegation that he is a victim of racial discrimination. (Doc. No. 2 at 4).

The Third Circuit has recognized that EMTALA requires hospitals to provide a screening that is not "so cursory that it would fail 'to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.'" *McCann v. Kennedy Univ. Hosp., Inc.*, 596 F. App'x 140 (3d Cir. 2014) (quoting *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1256 (9th Cir. 2001)). Nevertheless, Plaintiff's submissions in this

case do not suggest that Jefferson has been screening him in such a cursory fashion. Indeed, Plaintiff alleges that on January 16, 2020, Jefferson doctors performed a non-doppler ultrasound and detected the presence of possible cysts in both of his kidneys. (Doc. No. 1 at ¶9; Doc. No. 1-2 at 1, 6). As such, Jefferson's screening procedure was plainly adequate to identify the presence of possible cysts—the use of a doppler ultrasound was not required. As such, Plaintiff has little chance of success on the merits of his EMTALA failure-to-stabilize claim.

Even if there is something to be gained by performing a doppler ultrasound, Plaintiff has not demonstrated that he will suffer irreparable harm without a TRO against Jefferson. His only attempt at justifying his request is an assertion that it would take three weeks to receive a doppler ultrasound from his regular doctor, while Jefferson is capable of providing the doppler ultrasound right away. (Doc. No. 1 at ¶ 70). But because there is no indication that Plaintiff's condition will materially worsen during this three-week period, there is no support for his contention that he will suffer irreparable harm. Consequently, Plaintiff has not met his burden of showing irreparable harm in the absence of his desired TRO.

Given that Plaintiff has not shown likelihood of success on the merits nor irreparable harm, the Court sees no reason to examine the other two factors. Plaintiff's Motion for an *ex parte* TRO is **DENIED**. Nevertheless, Plaintiff has sufficiently documented his indigency such that his application to proceed IFP is **GRANTED**.

Dated: 2/24/2020

Renée Marie Bumb
United States District Judge